<u>NOT FOR PUBLICATION</u>

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSEPH ARUANNO, | : | Civil Action No. 07-5270 (AET) |
| Plaintiff, | : | |
| | : | <u>OPINION</u> |
| v. | : | |
| JON S. CORZINE, et al., | : | |
| Defendants. | : | |

**APPEARANCES:**

> JOSEPH ARUANNO, #309246, Plaintiff <u>Pro</u> <u>Se</u>
> Northern Regional Unit - Special Treatment Unit
> P.O. Box 699
> Kearny, New Jersey  07032-0699

<u>THOMPSON</u>, District Judge

Plaintiff Joseph Aruanno, civilly committed to the Northern Regional Unit, seeks to file a Complaint alleging violation of his constitutional rights, pursuant to 42 U.S.C. § 1983.  Having thoroughly reviewed Plaintiff's allegations and his affidavit of poverty, this Court will grant <u>in forma pauperis</u> status pursuant to 28 U.S.C. § 1915(a) and dismiss the Complaint for failure to state a claim upon which relief may be granted, without prejudice to the filing of an amended complaint.  <u>See</u> 28 U.S.C. § 1915(e)(2)(B).

## I.  BACKGROUND

Plaintiff sues Jon Corzine and James McGreevey, the governor and former governor of New Jersey; Richard Codey, John Bennett and Donald DiFrancesco, present and former legislators who temporarily acted as governor of New Jersey; the New Jersey Department of

Parole; and two members of the parole board.  He asserts the following facts, which this Court is required to regard as true for the purposes of this review.  See Stevenson v. Carroll, 495 F. 3d 62, 66 (3d Cir. 2007) (citing Markowitz v. Northeast Land Co., 906 F. 2d 100, 103 (3d Cir. 1990)).  Plaintiff asserts that in 2003 he submitted a petition for executive clemency to then Governor James McGreevey.  He further alleges that: "At that time I was advised by the Governor's Office that I must send a copy of it to the Parole Board for which I did.  But at that time I once again wrote Gov. McGreevey and explained what they had just said about the Parole Board and what they were about to do about it and made clear the NJ Parole Board was not capable of hearing my petition or anything else for which all agreed and I had asked the Governor to have himself or other persons review my petition but it has gone nowhere."  (Compl. attachment, p. 1.)  Plaintiff asserts that he thereafter sent Governor McGreevey a letter inquiring about the clemency petition, and he was informed there is no record of an application.  "I submitted another copy of the petition at great expense to myself which you see dated 5-27-03.  Which that time as you can see I sent to the Ombudsman because the Governors Office forwarded my letter there instead of taking an honest look at it and once again proving the incompetence that has us here."  (Id., p. 2.)  Plaintiff alleges that he submitted his clemency petition to every governor since McGreevey, "but they refuse to take an honest look at the case."  (Id., p. 1.)  "And now because the incompetence has gone critical as you can see by the enclosed letter from Gov. Jon Corzine's Office stating 'there is no record,' 'exhibit-A,' I am forced to submit this complaint to the Federal Courts to order the state to act on my petition which is declaratory and injunctive relief."  (Id.)

Attached to the Complaint is a letter dated September 5, 2007. This letter, which is addressed to Plaintiff from Susan Meier, Executive Clemency Assistant of Governor Jon S. Corzine, provides in relevant part:

> I am writing in response to your recent correspondence regarding an application for Executive Clemency by way of a Pardon. I regret to inform you that there is no record of an application from you. As you are aware, applications for Executive Clemency may be obtained by writing directly to Clemency Investigator Michael Landi, State Board of Parole . . . . Once the completed application has been returned to the Parole Board, an investigation will be conducted before the petition is referred to the Governor for his consideration.

(Compl., Exhibit A.)

Plaintiff seeks the following relief by way of his Complaint:

> I am asking this Court to order the defendants to comply with the laws and my rights by admitting they have received several copies of my petition for clemency and take an honest look at it. Also, I ask this Court to assign counsel in this case so I can proceed properly and fairly.

(Compl. ¶ 7.)

## II. LEGAL STANDARD FOR SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis. See 28 U.S.C. § 1915(e)(2)(B). The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Id.

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted); see also Haines v. Kerner, 404 U.S. 519, 520 (1972). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 127 S. Ct. at 2200 (citations and internal quotation marks omitted).

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Thomas v. Independence Tp., 463 F.3d 285, 296-97 (3d Cir. 2006); Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004). However, a court should not dismiss a complaint with prejudice for failure to state a claim without providing leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F. 3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F. 3d 113, 117 (3d Cir. 2000).

### III.  DISCUSSION

Federal courts are courts of limited jurisdiction.  Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U.S. 379, 383 (1884).  A district court may exercise jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority."  U.S. Const. art. III., § 2; see also 28 U.S.C. § 1331.  Specifically, 42 U.S.C. § 1983 authorizes a person to seek redress for a violation of his federal rights by a person who was acting under color of state law.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

This Court liberally construes Plaintiff's allegations as a potential claim that Defendants violated his Fourteenth Amendment due process rights.  The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States provides:  "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  To analyze a procedural due process claim, the first step is to decide whether the person

was deprived of a liberty or property interest protected by due process. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Fuentes v. Shevin, 407 U.S. 67 (1972). Only if the answer is yes, must a court determine what process is due. See Morrissey v. Brewer, 408 U.S. 471 (1972).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty' . . . , or it may arise from an expectation or interest created by state laws or policies." Wilkinson, 545 U.S. at 221 (citations omitted); see also Sandin v. Conner, 515 U.S. 472, 483-484 (1995). "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535-36 (1979). "[I]f a particular condition or restriction of . . . detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." Id. at 539 (citations and internal quotation marks omitted). However, "if a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." Id.

Although Plaintiff is currently not serving a criminal sentence but is civilly committed, the Due Process challenge presented in this Complaint involves the denial of clemency in the form of a pardon for a crime. Thus, it would appear that the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995), which focused on state created liberty interests regarding "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," governs his claim. Stevenson v. Carroll, 495 F. 3d 62, 69 n.4 (3d Cir. 2007) (quoting

Sandin, 515 U.S. at p. 484); see also Vitek v. Jones, 445 U.S. 480, 493 (1980); Montanye v. Haymes, 427 U.S. 236, 242 (1976).  As the Court of Appeals for the Third Circuit explained, "the baseline for determining what is 'atypical and significant' - the 'ordinary incidents of prison life' is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law."  Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997).

"[T]he Constitution . . . does not require the States to enact a clemency mechanism," Herrera v. Collins, 506 U.S. 390, 414 (1993), and "an inmate has no constitutional or inherent right to commutation of his sentence," Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 464  (1981) (citation and internal quotation marks omitted).  Moreover, "pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review."  Dumschat, 452 U.S. at 464 (footnote omitted).  The Supreme Court held in Dumschat that there is no interest arising from the Due Process Clause itself that a lawfully imposed sentence will be commuted.  Id. at 465.  Although a state may create a protected liberty interest "in statutes or other rules defining the obligations of the authority charged with exercising clemency," id., the Dumschat Court held that "[t]he Connecticut commutation statute, having no definitions, no criteria, and no mandated 'shalls,' creates no analogous duty or constitutional entitlement . . . beyond the right to seek commutation."  Id. at 466-67.

Most recently, the Supreme Court considered a due process clemency claim in Ohio Adult Parole Authority v. Woodard, 523 U.S. 272 (1988).  Although an inmate sentenced to death has a constitutionally protected life interest in not being summarily executed by prison

7

guards, id. at 281, four justices (Rehnquist, Scalia, Kennedy, and Thomas, JJ.) held that an Ohio inmate under death sentence had no protected life interest in clemency proceedings where "the procedures in question do no more than confirm that the clemency and pardon powers are committed, as is our tradition, to the authority of the executive." Id. at 276.[1] However, in a concurring opinion, Justice O'Connor, joined by Justices Souter, Ginsburg and Breyer, concluded that "some *minimal* procedural safeguards apply to clemency proceedings. Judicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." Woodard, 523 U.S. at 289 (O'Connor, J., concurring). Nevertheless, the concurring justices did not believe a remand was warranted, because the process Woodard received satisfied "whatever limitations the Due Process Clause may impose on clemency proceedings." Id. at 290.

Several courts of appeals have rejected claims that state clemency procedures violated the minimal due process standards set forth in the concurring opinion of Justice O'Connor. See, e.g., Anderson v. Davis, 279 F. 3d 674 (9th Cir. 2002) (rejecting claim that governor's policy of denying clemency to murderers violates Constitution); Parker v. State Bd. of Pardons and Paroles, 275 F. 3d 1032 (11th Cir. 2001) (rejecting death row inmate's claim that the Georgia Pardons Board is incapable of providing him with a clemency hearing that comports with the

---

[1] Citing Sandin, Justices Rehnquist, Scalia, Kennedy and Thomas observed that "the availability of clemency, or the manner in which the State conducts clemency proceedings, does not impose 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Woodard, 523 U.S. at 283. Citing Evitts v. Lucey, 469 U.S. 387 (1985), the plurality rejected the argument that an Ohio inmate is entitled to due process protection because clemency is an integral part of Ohio's system of adjudicating the guilt or innocence of a defendant. Id. at 285.

minimal, constitutionally-required standards of due process); Workman v. Bell, 345 F. 3d 849 (6th Cir. 2001) (rejecting claim that presentation of false and fabricated evidence in clemency proceeding violates due process); Faulder v. Texas Bd. of Pardons & Paroles, 178 F. 3d 343 (5th Cir. 1999) (finding that minimal due process requirements were satisfied in clemency proceeding); but see Young v. Hayes, 218 F. 3d 850 (8th Cir. 2000) (reversing dismissal of death row inmate's claim that Circuit Attorney for the City of St. Louis interfered with clemency process by threatening to fire one of the lawyers under her supervision if the lawyer provides information to the Governor of Missouri in connection with plaintiff's clemency application).

  In this Complaint, Plaintiff asserts that he submitted clemency applications to various New Jersey governors because "the entire NJ Parole Board was incompetent and committing some serious crimes for which they were going to be severely punished," but the governors "disregarded" his application and "refuse to take an honest look at the case." (Compl. attachment, p. 1.) Attached to the Complaint is a letter to Plaintiff from Governor Corzine's executive clemency assistant dated September 5, 2007, which states that the office received his correspondence regarding an application for executive clemency but has no record of his clemency application. The letter informs Plaintiff that he may obtain a clemency application from Clemency Investigator Michael Landi of the State Parole Board, and advises Plaintiff that, if he submits an application to the Parole Board, the Board would conduct an investigation before referring the application to the Governor for consideration. In light of this letter, and in light Plaintiff's allegation that he applied directly to various New Jersey governors because the Parole Board is incompetent and corrupt, the Complaint, as written, does not show that "the State arbitrarily denied [Plaintiff] access to its clemency process." Woodard, 523 U.S. at 289

9

(O'Connor, J., concurring). Because New Jersey has neither denied Plaintiff access to its clemency process nor arbitrarily denied clemency based on the flip of a coin, the Complaint does not assert violation of the minimal procedural safeguards set forth in Justice O'Connor's concurring opinion. This Court will therefore dismiss the Complaint for failure to state a claim upon which relief may be granted. However, because Plaintiff's allegations do not foreclose the possibility that New Jersey may have arbitrarily denied Plaintiff access to its clemency process, this Court will grant Plaintiff 45 days leave to file an amended complaint stating a due process claim under the concurring opinion of Justice O'Connor in Woodard.

### IV.  CONCLUSION

For the reasons set forth above, the Court dismisses the Complaint, without prejudice to the filing of an amended complaint within 45 days of the date of the entry of the Order accompanying this Opinion.

                                                       s/ Anne E. Thompson
                                      **ANNE E. THOMPSON, U.S.D.J.**

Dated: December 27, 2007